# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

| | | |
|---|---|---|
| ANDRED CLINTON DAVIS, JR., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Civil Action No. 3:22-00150** |
| | ) | |
| BETSY JIVIDEN, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following: (1) Defendant Brewer's Motion to Dismiss (Document No. 19), filed on April 19, 2022; (2) Defendants Aldridge, Davis, Diamond, Fleming, Jividen's Motion to Dismiss (Document No. 21), also filed on April 19, 2022; (3) Defendant Nurse Regina Bryant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document No. 23), also filed on April 19, 2022; and (4) Defendant Keefe Group's Motion to Dismiss (Document No. 25), filed on April 21, 2022. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motions and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 29.) Plaintiff filed his Response in Opposition on July 11, 2022. (Document No. 31.) On July 13, 2022, Defendant Keefe Group filed its Reply. (Document No. 32). (Id.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendant Brewer's Motion to Dismiss (Document No. 19) should granted, Defendants Aldridge, Davis, Diamond, Fleming, Jividen's Motion to Dismiss (Document No. 21) should be granted in part and denied in part, Defendant Nurse Regina Bryant's Motion to Dismiss, or in the Alternative, Motion for

Summary Judgment (Document No. 23) should be granted, and Defendant Keefe Group's Motion to Dismiss (Document No. 25) should be granted.

## **PROCEDURAL BACKGROUND**

On March 28, 2022, Plaintiff, acting *pro se*,[1] filed his Complaint for alleged violations of his constitutional rights pursuant to 42 U.S.C. § 1983. (Document No. 1.) Plaintiff names the following as Defendants: (1) Betsy Jividen, Commissioner of WVDOC; (2) Carl Aldridge, Warden; (3) Paul Diamond, Captain; (4) Christopher Fleming, Major; (5) Keefe, LLC; (6) Sgt. Brewer; (7) Nurse Regina LNU; and (8) Lt. Davis. (Id., p. 4.) Plaintiff alleges that his constitutional rights have been violated on several occasions during his confinement at the Western Regional Jail ("WRJ"). (Id., pp. 8 – 9.) First, Plaintiff appears to allege that his constitutional rights were violated because he was disciplined for fighting with other inmates on or about March 30, 2020. (Id., p. 8.) Plaintiff complains that "Lt. Davis discriminated against black prisoners when he put [Plaintiff], along with other black prisoners, in the hole for a fight that occurred in the facility, however did not discipline Caucasian prisoners that were also involved in the fight." (Id.) Plaintiff states that he was "kept in the hole by Major Fleming and Cpt. Paul Diamond." (Id.) Plaintiff contends that when he discussed the issue with Major Fleming, Major Fleming "laughed in [Plaintiff's] face and told [Plaintiff] to 'rot nig*er.'" (Id.) Plaintiff explains that "Lt. Davis, with the support of Carl Aldridge, put 8 black prisoners in the hole for assault and battery and were told they must take lessor pleas of fighting if they wanted to be released." (Id.) Plaintiff states that he declined the plea and requested a hearing. (Id.) Plaintiff, however, asserts that Sgt. Brewer refused to give him a hearing and kept Plaintiff "in the hole for 6 – 8 weeks." (Id.) Plaintiff alleges that Sgt. Brewer

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

found him guilty without a hearing. (Id., p. 9.) Plaintiff further complains that Sgt. Brewer "is the hearing officer and DOC policy states that a hearing officer must be independent of the chain of command." (Id., p. 8.) Thus, Plaintiff argues that WRJ is in violation of policy. (Id.) Plaintiff claims he "wrote Commissioner Betsy Jividen and explained the circumstances and was ignored." (Id.)

Second, Plaintiff complains that "blacks are treated differently than white prisoners" at WRJ. (Id.) Plaintiff states that there are "all white pods here and when black prisoners are placed in these pods, they get jumped by the white prisoners." (Id.) Plaintiff further complains that "white prisoners even scream out the '300' chant" and "this happened to me twice while being at Western Regional back in 2013." (Id.) Plaintiff alleges that his "behavior by white prisoners is not only known, but condoned by Warden Carl Aldridge." (Id.) Plaintiff further asserts that he has discussed the "systemic racism in the jail" with Sgt. Brewer and other officers, but there has been no response. (Id.)

Third, Plaintiff complains that Major Christopher Fleming denied "all reading materials that were ordered for [him] by family and friends, which is a violation of policy." (Id.) As an example, Plaintiff states that "Major Fleming said of one book, White Fragility by Robin DiAngelo, it was 'too racial' and would not let [Plaintiff] have it because of this." (Id.)

Fourth, Plaintiff alleges that on September 21, 2021, he was sprayed "with a highly chemical agent meant to be used outside" and he was "left handcuffed while it burned [his buttocks and crotch area." (Id.) Plaintiff explains he was "then put in an extraction chair on a 'hitching post' for all to see by Capt. Paul Diamond." (Id.) During this time, Plaintiff states that he notified CO Racer[2] of his need to urinate. (Id.) Plaintiff, however, states that CO Racer responded "tough, do

_____

[2] Plaintiff does not name CO Racer as a defendant in his Complaint.

3

it in the chair." (Id.) Plaintiff alleges that he was forced to urinate on himself while restrained to the chair. (Id.) Plaintiff further states that he informed CO Racer, Capt. Diamond, and Major Fleming that he was burning from the chemical spray, but they just laughed at Plaintiff. (Id.) Plaintiff contends that he "was not allowed to decontaminate after being sprayed with this chemical, which is against policy." (Id.) Plaintiff alleges that after "5 hours of sitting in the extraction chair," Plaintiff was placed back in his cell that was still contaminated with the chemical spray. (Id.) Plaintiff alleges that policy provides that his cell should have been decontaminated. (Id.)

Fifth, Plaintiff complains that handcuffs were applied too tightly on September 25, 2021.[3] (Id., p. 9.) Plaintiff explains that he was required to cuff up to attend a visit from Attorney Faun Chushan. (Id.) Plaintiff states that he informed staff that "the handcuffs were too tight to which they told [him] that [he] could either stay that way or not see [his] attorney." (Id.) Plaintiff alleges that after meeting with his attorney, officers "left [Plaintiff] in a chair for several hours and only after [Plaintiff] screamed continuously [did] Officer Sparks come and loosened the cuffs." (Id.) Plaintiff states that his "hand still has problems and does not function well." (Id.)

Finally, Plaintiff claims that "Keefe worker Kim allowed [Plaintiff] to be poisoned with PCP." (Id.) Plaintiff states that "she was fired along with another worker for bringing illegal narcotics into the jail using commissary bags that contained our food." (Id.) Plaintiff asserts that he discussed with Nurse Reginia that "something was not right following the PCP incident that something was wrong with [his] mind," but Nurse Reginia denied him any medical care. (Id.) As

---

[3] Plaintiff does not name a defendant concerning this claim or indicate the name of the officer that allegedly placed the handcuffs too tightly on his hands. Accordingly, the undersigned does not consider this claim regarding Defendants pending Motions.

relief, Plaintiff requests monetary and injunctive relief. (Id.)

As Exhibits, Plaintiff attaches the following: (1) A copy of Plaintiff's grievance (Grievance No. 20-WRJ-A5-292) dated April 27, 2020 (Id., pp. 10 - 12.); (2) A copy of a letter dated April 22, 2020 (Id., pp. 13 – 14.); (3) A copy of Plaintiff's "Disciplinary Process Appeal Form" dated March 28, 2022 (Id., p. 15.); (4) A copy of Plaintiff's grievance (Grievance No. 20-WRJ-F2-801) dated September 7, 2020 (Id., pp. 16 – 17.); (5) A copy of Plaintiff's grievance (Grievance No. 20-MOCC-Q2-991) dated September 30, 2020; (6) A copy of a letter dated October 7, 2020, from Plaintiff to Superintendent Aldridge (Id., p. 19.) (7) A copy of a letter dated November 8, 2020, from Plaintiff to the Commissioner (Id., p. 20.); (8) A copy of Plaintiff's grievance (Grievance No. 20-MOCC-Q2-1042) dated October 12, 2020 (Id., pp. 21 - 22.); (9) A copy of Plaintiff's Complaint filed with the State of West Virginia Board of Examiners for Registered Professional Nurses against Nurse Reginia (Id., pp. 23 - 24.); (10) A copy of Plaintiff's grievance (Grievance No. 20-MOCC-Q2-1135) dated October 24, 2020 (Id., p. 25.); (11) A copy a EMG Report from Charleston Area Medical Center regarding Plaintiff's right hand (Id., pp. 26 - 27.); (12) A copy of a Memorandum dated July 19, 2021, from the Central Office Grievance Review to Plaintiff stating that his claims of racial discrimination were referred to the Corrections Investigative Division and were found to be unsubstantiated (Grievance No. 21-MOCC-Q2-705) (Id., p. 28.); (13) A copy of a Memorandum dated November 19, 2020, from the Central Office Grievance Review to Plaintiff stating that his claims of exposure to phencyclidine ("PCP") was forwarded to the Director of Security and the Director of Correctional Investigations Division for further review (Grievance No. 20-MOCC-Q2-1127) (Id., p. 29.); (14) A copy of Plaintiff's "Mount Olive Correctional Complex and Jail Unit Team Request Form" dated November 12, 2020 (Id., p. 30.); (15) A copy of Plaintiff's grievance dated November 13, 2020 (Id., pp. 31 – 32.); (16) A copy of Plaintiff's

grievance (Grievance No. 20-MOCC-Q2-1127) dated October 24, 2020 (Id., p. 33.); (17) A copy of Plaintiff's grievance (Grievance No. 20-MOCC-Q2-1120) dated October 21, 2020 (Id., p. 34.); and (18) A copy of Plaintiff's grievance (Grievance No. 21-MOCC-Q2-76) dated January 9, 2021 (Id., pp. 35 - 36.).

Plaintiff paid the filing fee on the same day as filing the Complaint and the Clerk issued process upon the named Defendants. (Document Nos. 1-1, 2 - 9.) On April 19, 2022, Defendant Brewer filed his Motion to Dismiss and Memorandum in Support. (Document Nos. 19 – 20.) Defendant Brewer first argues that Plaintiff's allegations fail to establish a due process violation by Defendant Brewer. (Document No. 20, pp. 3 – 6.) Second, Defendant Brewer contends he is "entitled to dismissal based on both qualified immunity and judicial immunity." (Id., p. 6.) Finally, Defendant Brewer argues that he is not a "person" under Section 1983 because Plaintiff's claims are asserted against Defendant Brewer in his official capacity. (Id., pp. 7 – 8.)

Also on April 19, 2022, Defendants Aldridge, Davis, Diamond, Fleming, and Jividen filed their Motion to Dismiss and Memorandum in Support. (Document Nos. 21 – 22.) First, Defendants argue that they are not a "person" under Section 1983 because Plaintiff's claims are asserted against Defendants in their official capacity. (Document No. 22, pp. 4 – 5.) Second, Defendants argue that "the Complaint is completely void of any specific facts that would support liability against the Defendants (individually) under § 1983" or how such an alleged violation "proximately caused the damages alleged." (Id., pp. 5 – 6.) Third, Defendants argue that Plaintiff's deliberate indifference claims must be dismissed because "Defendants have not been put notice of what specific conduct by them, which violated Plaintiff's constitutional rights, purportedly caused more than de minimis injury to the Plaintiff." (Id., pp. 6 – 9.) Finally, Defendants assert they are entitled to qualified immunity. (Id., pp. 9 – 11.)

Also on April 19, 2022, Defendant Regina Bryant's filed her "Motion to Dismiss, and in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 23 – 24.) Defendant Bryant argues that "[t]here is no evidence in this case that Nurse Bryant's conduct constituted deliberate indifference to a serious medical need." (Document No. 24, p. 5 – 10.)

On April 21, 2022, Defendant Keefe filed a Motion to Dismiss and Memorandum in Support. (Document Nos. 25 - 26.) Defendant Keefe argues that "Plaintiff's threadbare recitations fail to implicate a constitutionally protected interest and fail to set forth any factual allegations relating to conduct of Keefe or its employees which could be construed as violative of his constitutional rights." (Id.) Thus, Defendant Keefe contend that Plaintiff's Complaint does not state a Section 1983 claim that is plausible on its face such that it can survive 12(b)(6)." (Id.)

By Order entered on April 28, 2022, the above action was transferred to the undersigned for total pretrial management and submission of proposed findings of fact and recommendation for disposition. (Document Nos. 27 and 28.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on November 29, 2022, advising him of the right to file a response to Defendants' above Motions (Document Nos. 19 – 26). (Document No. 29.) Plaintiff filed his Response in Opposition on July 11, 2022.[4] (Document No. 31.) On July 13, 2022, Defendant Keefe filed its Reply. (Document No. 32.)

On July 15, 2022, Defendant Bryant filed a "Motion for Enlargement of Time for Plaintiff

---

[4] On June 1, 2022, Plaintiff filed a letter-form Motion for Extension of Time regarding the filing of his Response. (Document No. 30.) Plaintiff filed his Response on July 11, 2022. (Document No. 31.) For good cause shown, it is hereby **ORDERED** that Plaintiff's letter-form Motion for Extension of Time (Document No. 30) is **GRANTED**. Accordingly, the undersigned considers Plaintiff's Response (Document No. 31) as being timely filed.

to Respond to Regina Bryant, LPN's, Motion to Dismiss Complaint and Alternative Motion for Summary Judgment." (Document No. 34.) Specifically, Defendant Bryant requested that this Court allow "Plaintiff an extension to respond to her pending 'Motion to Dismiss Complaint and Alternative Motion for Summary Judgment' due to counsel's inadvertent failure to mail the Motion to the Plaintiff at the time it was filed." (Id.) Defendant Bryant further stated that on July 15, 2022, a copy of the "Motion to Dismiss Complaint and Alternative Motion for Summary Judgment" and Memorandum in Support "were deposited in the U.S. Mail and sent to Plaintiff at his address on file with the Court." (Id.) By Order entered on July 18, 2022, the undersigned granted Defendant Bryant's above Motion and directed that Plaintiff shall file any Response to Defendant Bryant's "Motion to Dismiss Complaint and Alternative Motion for Summary Judgment" (Document No. 23) by August 16, 2022. (Document No. 37.) Plaintiff, however, failed to file any further response.

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550

U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

Federal Courts are Courts of limited jurisdiction that are empowered to consider cases authorized by Article III of the United States Constitution and statutes enacted by Congress. Bender v. Williamsport Area School District, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). A motion to dismiss filed pursuant to Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Once subject matter jurisdiction is challenged, plaintiff bears the "burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Subject matter jurisdiction cannot be waived by the Court or the parties. The absence of subject-matter jurisdiction may be raised at any time. Lovern v. Edwards, 190 F.3d 648 (4th Cir. 1999). When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a District Court may refer to evidence outside the pleadings without converting the proceeding to one for summary judgment. See William v. United States, 50 F.3d 299 (4th Cir. 1995).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts

9

in the light most favorable to the non-moving party. <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. <u>Celotex</u>, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## ANALYSIS

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." <u>Turner v. Safley</u>, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Title 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." <u>Monell v. Dep't of Social Services</u>, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

### A.    **Claims Against Defendants in their Official Capacities**:

In their Motions to Dismiss, Defendants Brewer, Jividen, Aldridge, Diamond, Fleming, and Davis argue Plaintiff's claims against them are barred by the Eleventh Amendment of the United States Constitution and the *Will* Doctrine. (Document No. 20, p. 7 – 8, Document No. 22, pp. 4 – 5.) Defendants Brewer, Jividen, Aldridge, Diamond, Fleming, and Davis argue that Plaintiff

10

is suing the Defendants in their official capacities. (Id.) Defendants contend that they are "agents of the State while acting as an employee of the West Virginia Division of Corrections and Rehabilitation" and are not "persons" under Section 1983. (Id.) Thus, Defendants conclude Plaintiff's claims are barred. (Id.) Plaintiff failed to address this issue in his Response. (Document No. 31.)

Suits against a state or state agencies for monetary damages are barred by the Eleventh Amendment to the United States Constitution.[5] See Will v. Michigan Dept. of State Police, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). The Eleventh Amendment protects states from being sued in federal court on the basis of state law. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 117, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Westinghouse Elec. Corp. v. West Virginia Dept. of Highways, 845 F.2d 468, 470 (4th Cir.), cert. denied, 488 U.S. 855, 109 S.Ct. 143, 102 L.Ed.2d 116 (1988). The Eleventh Amendment immunity not only applies to states and state agencies, but extends to suits filed against state officials when "the relief sought and ordered has an impact directly on the State itself." Pennhurst, 465 U.S. at 117, 104 S.Ct. at 917. See also Fauconier v. Clarke, 966 F.3d 265, 279-80 (4th Cir. 2020)(an individual that is employed by an arm of the State and is sued in his or her official capacity is immune from suit under the Eleventh Amendment); Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996)("This immunity extends to 'arm[s] of the State,' (citations omitted) including state agencies and state officers acting in their official capacity. (citations omitted)). "Neither a state nor its officials acting

_____

[5] The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

in their official capacities are 'persons' under § 1983." Will, supra, 491 U.S. at 71, 109 S.Ct. at 2312. In Will, however, the Supreme Court held that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State." Id.; also see Frew v. Hawkins, 540 U.S. 431, 437, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004)("the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law").

A person acting under color of state law can be sued in either his or her official or personal capacity for violating a prisoner's constitutional rights. Thus, a prison official may be sued in his or her personal capacity for the official's own acts or omissions occurring under color of state law. If the prison official is sued in his or her personal capacity, the prison official may be liable for money damages. If the prison official, however, is sued in his or her official capacity, the prison official may *not* be sued for money damages because the official is entitled to sovereign immunity. In Hafer, the Court explained that the real party in interest in an official capacity claim is the governmental entity and the target of the claim is the entity's policy or custom. Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." Id. To the extent Plaintiff seeks monetary damages from the Defendants in their official capacity, the undersigned finds that Plaintiff's claims are barred by the Eleventh Amendment and should be dismissed. See Adams v. Ferguson, 884 F.3d 219 (4th Cir. 2018)("[T]he Eleventh Amendment does not bar an award of damages against an official in his personal capacity that can be executed only against the official's personal assets.") Liberally construing Plaintiff's Complaint, however, the undersigned finds that Plaintiff's allegations appear to be against the Defendants in the personal capacity for actions taken under color of state law. Specifically,

12

Plaintiff alleges that Defendants subjected him to racial discrimination, denied him due process during his disciplinary hearing, and subjected him to cruel and unusual punishment. Plaintiff does not appear to target the prison's policies or customs, but complains of allegedly improper conduct and a violation of policies by the individual Defendants. Thus, the undersigned finds that the foregoing claims are asserted against Defendants in their personal capacities. To the extent Plaintiff has asserted official capacity claims against Defendants seeking monetary relief, the undersigned respectfully recommends that the District Court dismiss Plaintiff's claims.

### B.    __Due Process Claim:__

In his Complaint, Plaintiff appears to contend that Defendant Brewer violated Plaintiff's right to procedural due process concerning his disciplinary proceedings. (Document No. 1, pp. 8 - 9.) Specifically, Plaintiff alleges that Defendant Brewer denied his request for a disciplinary hearing and found Plaintiff guilty of the disciplinary violation without[6] conducting a hearing.[7] (Id.) Plaintiff states that his conviction resulted in his placement "in the hole for 6 – 8 weeks."[8] (Id.)

---

[6] Plaintiff's allegations appear to be contradictory. Although Plaintiff claims that no hearing was held, Plaintiff states that Defendant Brewer "heard" the matter and Officer Robinson was present. (Document No. 1, paragraph 12.)

[7] To the extent Plaintiff alleges that the disciplinary charges were false, such does not state a constitutional claim. It is well-established that the act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2nd Cir. 1986)("The act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights."); *McClary v. Fowlkes*, 2008 WL 3992637, *4 (E.D.Va. 2008)(finding inmate has no constitutional right against being falsely accused of conduct that may result in deprivation of protected liberty interest); *Rhodes v. Sterling*, 475 F.Supp.3d 470 (D.S.C. July 30, 2020)(allegations that false disciplinary charges were brought were insufficient to state a Section 1983 claim); *Jenkins v. Bittinger*, 2016 WL 11410971, * 2 (D.S.C. Oct. 17, 2016)("Plaintiff has no actionable constitutional claim against either [defendant] based on his allegations of their filing 'false' disciplinary charges.").

[8] If Plaintiff's disciplinary proceedings would have involved the loss of good time credit, Plaintiff would have been entitled to the procedures set forth in *Wolff*. In *Wolff*, however, the Supreme

Plaintiff further argues that Defendant Brewer was an improper hearing officer pursuant to WVDOC policy because Defendant Brewer was not "independent of the chain of command." (Id.) Finally, Plaintiff asserts that Defendant Aldridge and Jividen were aware of the foregoing and failed to take corrective action.[9] (Id.)

In his Motion to Dismiss, Defendant Brewer argues that there was no due process violation. (Document No. 20.) Defendant Brewer first argues that Plaintiff cannot identify a liberty interest

---

Court stated that "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have lawfully committed. *Wolff*, 418 U.S. at 556, 94 S.Ct. at 2975. The Supreme Court explained that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* Thus, "*Wolff* stands for the proposition that a prisoner is not guaranteed unfettered access to exculpatory evidence in the context of a disciplinary hearing." *Johnson v. Warden, FCI Williamburg*, 2014 WL 4825926, * 2 (D.S.C. Sept. 24, 2014), *aff'd* 597 Fed.Appx. 161 (4th Cir. 2015), *cert. denied*, ___ U.S. ___, 136 S.Ct. 556, 193 L.Ed.2d 430 (2015). In disciplinary hearings, due process is satisfied when the findings of the disciplinary authority are supported by "some evidence." *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985). To the extent Plaintiff is claiming his disciplinary conviction resulted in the loss of good time credit and resulted in a violation in his due process rights, such a claim must first be pursued pursuant to 28 U.S.C. § 2241. A Section 1983 action seeking monetary damages for Plaintiff's allegedly invalid disciplinary conviction would be precluded by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) unless Plaintiff successfully challenged his disciplinary conviction in a *habeas* proceeding.

[9] In addition, the undersigned further finds that the dismissal of a defendant is appropriate where the defendant's sole involvement in an action is related to the administrative remedy process. *See Fellove v. Heady*, 2008 WL 196420 *4 (N.D.W.Va. Jan. 22, 2008)(stating that "to the extent that the plaintiff may be asserting that these defendants were deliberately indifferent to his needs by denying his administrative grievances, that claim is also without merit as this is not the type of personal involvement required to state *Bivens* claim"); *Mabry v. Ramirez*, 2007 WL 4190398 *6 (N.D.W.Va. Nov. 21, 2007)(holding that "denying a prisoner's institutional grievance is not the type of personal involvement required to state a *Bivens* claim for deliberate indifference to serious medical needs"); *Paige v. Kupec*, 2003 WL 23274357 *1 (D.Md. March 31, 2003), *aff'd*, 70 Fed. Appx. 147 (4th Cir. 2003)(finding that the warden should be dismissed where the only claim against the warden concerned his dismissal of plaintiff's administrative remedy). Plaintiff's claims against Defendant Aldridge and Jividen are based solely upon Defendant Alldridge and Jividen's involvement in the administrative remedy process.

14

that entitles him to any procedural due process protection. (Id.) Defendant Brewer further states that even assuming Plaintiff could show a liberty interest, Plaintiff cannot establish that the denial of such an interest imposed an atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life. (Id.) Defendant Brewer explains that being housed in a more secure unit or being denied privileges does not amount to a denial of a liberty interest under federal law. (Id.) Specifically, Defendant Brewer claims that being held in more restrictive quarters or being denied privileges for a short period of time does not constitute "a typical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life." (Id.) Thus, Defendant Brewer argues that Plaintiff was not entitled to any procedural due process with regard to the disciplinary hearing because no liberty interest was at issue. (Id.) Finally, Defendant Brewer explains that "even if Plaintiff were entitled to due process protections, he received the protections mandated by law." (Id.) Accordingly, Defendant Brewer argues that his Motion to Dismiss should be granted. (Id.)

In his Response, Plaintiff fails to address the above argument. (Document No. 31.) Plaintiff merely states that "Lt. Davis put me in the hole" and Plaintiff was subjected to a "violation of due process." (Id.)

Although the Fourteenth Amendment of the United States Constitution prohibits a State from depriving "any person of life, liberty, or property, without due process of law," the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for the period of incarceration. See U.S. Const. amend. XIV, § 1; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction and imprisonment implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. Gaston, 946 F.2d at 343. Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests."

15

Id. (emphasis added) To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)(quoting Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." Id. at 343. The Supreme Court held in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions of his detention exceeded the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Id., 515 U.S. at 484, 115 S.Ct. at 2300 (citations omitted); see McNeill v. Currie, 84 Fed.Appx. 276, 277 (4th Cir. 2003); also see Ponte v. Real, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985)(When a disciplinary sanction impacts the duration of a federal inmate's sentence, a protected liberty interest in the inmate's release from confinement is implicated, and minimal procedural guarantees are recognized.); Smith v. Deemer, 641 Fed.Appx. 865,868 (11th Cir. 2016)(citing Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (Wolff sets forth procedures that must accompany disciplinary hearings when there is a loss of good time credit. When a prisoner has not lost any good-time credit, Wolff does not apply); Ordaz v. Lynaugh, 20 F.3d 1171 (5th Cir. 1994)("Wolff . . . does not determine the procedural requirements for disciplinary action such as restriction of commissary privileges.");

Annabel v. Frost, 2015 WL 1322306, * 8 (W.D.Ky. June 14, 2016)("A prison inmate has a liberty interest in disciplinary proceedings if he or she faces a sanction that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incident of prison life."). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the inmate's claims have no merit. Id.

First, there is no allegation or indication that the conditions Plaintiff's detention exceeded the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause. Next, the undersigned considers whether Plaintiff has established a protected liberty interest. "Without a protected liberty or property interest, there can be no federal procedural due process claim." Experimental Holding, Inc. v. Farris, 503 F.3d 514, 519 (6th Cir. 2007)(citing Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 579, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)); also see Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005)("We need reach the question of what process is due only if the inmate establishes a constitutionally protected liberty interest"). In the instant case, there is no allegation or indication that Plaintiff lost any good time credit as a result of his disciplinary charges. Plaintiff, however, alleges that he had a liberty interest based upon WVDOC policy requiring inmates given a disciplinary hearing by an independent hearing officer. Prison staff's failure to follow their own policies or procedures, standing alone, does not amount to a constitutional violation. Riccio v. County of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990)(If the state law grants more procedural rights than the Constitution requires, a State's failure to abide by that law is not a federal due process issue); Donohue v. Diggs, 2011 WL 795889, * 3 (W.D.Va. March 1, 2011)("[A] state's failure to abide by its own procedural regulations is not a federal due process issue and is, therefore,

not actionable under § 1983."). Accordingly, the undersigned finds that Plaintiff's reliance upon a policy directive to establish a protected liberty interest is without merit.[10]

Next, the undersigned will consider whether Plaintiff can establish that the conditions of confinement constitute atypical and significant hardship in relation to the ordinary incidents of prison life. A "fact specific" comparative exercise is required when determining whether confinement conditions are atypical and substantially harsh "in relation to the ordinarily incidents of prison life." Id. In Prieto, the Fourth Circuit determined that the Sandin standard contains two parts: (1) First, the Court must determine what constitutes the "ordinary incidents of prison life" for this particular inmate; and (2) Second, with that baseline established, the Court must determine whether the prison conditions impose atypical and substantial hardship in relation to that norm. Prieto, 780 F.3d at 253-54. Although general prison population is not always the basis for comparison, "general population is the baseline for atypicality for inmates who are sentenced to confinement in the general prison population and have been transferred to security detention while serving their sentence." Incumaa, 791 F.3d at 527("[T]he 'baseline for atypicality' may shift depending on the 'prisoner's conviction and sentence.'")(citing Prieto, 780 F.3d at 253). In the instant case, the undersigned finds that general population is the appropriate baseline as Plaintiff indicates he was in general population before being placed in punitive and administrative segregation. Using general population as the baseline, the undersigned finds that Petitioner fails to allege conditions of confinement in segregation that satisfy the standard set forth in Sandin. In

---

[10] Even where a state statute or policy may create a liberty interest, the denial of such an interest must "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" for the liberty interest to warrant the protection of the Due Process Clause. *See Prieto v. Clarke*, 780 F.3d 245, 249 (4th Cir. 2015)(citing *Sandin*, 515 U.S. 481-82, 115 S.Ct. 2293).

Beverati, the Fourth Circuit determined that the following conditions in administrative segregation did not constitute atypical and significant hardship in comparison to general population:

> ...cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. And, [the inmates] assert, they were forced to use their clothing and shampoo to clean the cells. In addition, Inmates maintain that their cells were unbearably hot and that the food they received was cold. Furthermore, Van Aelst submitted an affidavit indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no educational or religious services available; and that food was served in considerably smaller portions.

Beverati, 120 F.3d at 502. In contrast, the Supreme Court in Wilkinson determined that the following conditions at a supermax facility imposed an atypical and significant hardship under any plausible baseline:

> . . . almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room. Save perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities, but here there are two added components. First is the duration. Unlike the 30-day placement in *Sandin*, placement at OSP is indefinite and, after an initial 30-day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context.

Wilkinson, 545 U.S. at 223-24, 125 S.Ct. at 2394-95.

Although Plaintiff appears to challenge the appropriateness for his placement in segregation, he cannot establish that specific conditions of his confinement in segregation were atypical and created a significant hardship as compared to ordinary prison life in general population. Plaintiff appears to conclude that his mere placement in segregation constitutes a due process violation. Segregation, in and of itself, does not deprive an inmate of a liberty interest or

19

create an atypical hardship. See Beverati, 120 F.3d at 502. The length of time that segregation is imposed is a factor which Courts must consider in determining whether conditions are significant and atypical. See Wilkinson, 545 U.S. at 224, 125 S.Ct. at 2394-95; Tellier v. Fields, 280 F.3d 69, 80 (2nd Cir. 2000)(finding an inmate's confinement in segregation for 514 days without having a hearing resulted in confinement that was atypical and significant). In the instant case, Plaintiff's segregation was not for an indefinite period and there is no allegation his confinement in segregation had a collateral consequence on his sentence. Plaintiff was placed "in the hole for 6 - 8 weeks," which is not such a prolonged period as to constitute a significant and atypical hardship. See Wilkerson v. Goodwin, 774 F.3d 845, 855 (5th Cir. 2014)(citing cases)("[T]he duration in segregated confinement that courts have found does not give rise to a liberty interest ranges up to two and one-half years."). Plaintiff does not set forth any specific conditions of his confinement in segregation were atypical and created a significant hardship as compared to ordinary prison life in general population. Additionally, nothing in the record indicates that Plaintiff's conditions of confinement in segregation were atypical or resulted in a significant hardship. To the extent that Plaintiff alleges a liberty interest in retaining all privileges, the undersigned finds that Plaintiff's claim is without merit. The denial of privileges and confinement in segregation are matters clearly contemplated by Plaintiff's original sentence. See Gaston, 946 F.2d at 343 (To safely and efficiently run the prison, prison officials maintain broad discretion over an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges"); Hatch v. District of Columbia, 184 F.3d. 846, 855 (D.C. Cir. 1999)(stating that "the transfer of an inmate to less amenable and more restrictive quarter for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); and Gholson v. Murry, 953 F. Supp. 709, 716 (E.D.Va. 1997)(finding that

20

the denial of work opportunities and certain education programs did not impose an atypical and significant hardship on inmates placed in segregation in relation to the ordinary incidents of prison life). Furthermore, it is well established that an inmate has no federal right to demand rehabilitative programs. Moody v. Daggett, 429 U.S. 78, 88, n. 9, 97 S. Ct. 274, 279, n. 9, 50 L. Ed. 2d 236 (1976)(holding that federal prisoners have no statutory or constitutional right to participate in rehabilitative programs while incarcerated); Acree v. Clark, 86-7167, 1986 WL 18023 (4ᵗʰ Cir. Nov. 10, 1986) citing Bowring v. Godwin, 551 F.2d 44, 48 n 2 (4ᵗʰ Cir. 1977)(stating that "[i]t has been widely recognized that rehabilitation is one of the primary purposes and goals of incarceration, although it is not mandated by any provision of the Constitution"); Gill v. United States Parole Commission, et al., 692 F. Supp. 623, 628 (E.D.Va. 1988)(holding that the sentencing Court's order recommending that petitioner be placed in a drug rehabilitation program failed to vest any fundamental right in plaintiff to participate in such program); and Pace v. Fauver, 479 F. Supp. 456, 459 (D.N.J. 1979)(holding that prison officials' refusal to allow state prisoners to establish and operate an alcoholic rehabilitation program within the prison was not a violation of the Fifth, Eighth or Fourteenth Amendment). Finally, the Due Process Clause does not give an inmate a liberty interest in a certain prison classification. See Hewitt v. Helms, 459 U.S. 460, 477 n. 9, 103 S.Ct. 864, 874 n. 9, 74 L.Ed.2d 675 (1983)(stating that the "transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); Slezak v. Evatt, 21 F.3d 590, 594 (4ᵗʰ Cir. 1994), citing Montanye v. Haymes, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)(the federal Constitution "vests no liberty interest in inmates in retaining or receiving any particular security or custody status as long as challenged conditions or degree of confinement is within sentence imposed and is not otherwise violative of Constitution"); Altizer v. Paderick, 569

21

F.2d 812 (4ᵗʰ Cir. 1978)(holding that federal due process constraints are not implicated because the classification of a State prison inmate is a matter of State prison officials' discretion); and Meachum v. Farno, 427 U.S. 215, 225 (1976)(stating that the transfer of an inmate to a higher security facility does not violate a liberty interest). Since the facts underlying Plaintiff's Complaint are insufficient to establish a protected liberty interest under the Due Process Clause, the undersigned finds it unnecessary to consider what process was due to Petitioner. See Wilkinson, 545 U.S. at 221, 125 S.Ct. at 2393("We need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest . . ."); Petway v. Lappin, 2008 WL 629998 (N.D.W.Va. March 5, 2008)(finding that plaintiff's "due process complaints concerning either the misapplication of policy and procedures, or a lack of official rules and regulations, must fail" because the inmate had no protected liberty interest in avoiding segregated confinement"). Accordingly, the undersigned respectfully recommends that Plaintiff's due process claim be dismissed and Defendant Brewer's Motion to Dismiss be granted.

Based upon the foregoing, the undersigned finds it unnecessary to consider the other reasons which Defendant Brewer has submitted for dismissal.

### C.    **Equal Protection Claim**:

In his Complaint, Plaintiff alleges that Defendant Davis, with the support of Defendant Aldridge, discriminated against Plaintiff and eight other black prisoners on or about March 30, 2020, when Plaintiff and the other black inmates were put in the "hole" for fighting. (Document No. 1, pp. 8 – 9.) Plaintiff indicates that the fight occurred between the black and white inmates. (Id.) Plaintiff claims that all black inmates received disciplinary action for "assault and battery," but the white inmates received no disciplinary action for their involvement in the fight. (Id.) Plaintiff states that he was "kept in the hole by Major Fleming and Cpt. Paul Diamond." (Id.)

22

Plaintiff contends that when he discussed the issue with Defendant Fleming, but Defendant Fleming "laughed in [Plaintiff's] face and told [Plaintiff] to 'rot nig*er.'" (Id.) As a further example of discriminatory conduct, Plaintiff asserts that Defendant Aldridge deliberately allows black inmates to be treated differently than white inmates by maintaining "all white pods here." (Id.) Plaintiff contends that "when black prisoners are placed in these pods, they get jumped by the white prisoners." (Id.) Plaintiff alleges that this "behavior by white prisoners is not only known, but condoned by the Warden Carl Aldridge." (Id.)

In their Motion, Defendants Aldridge, Davis, Diamond, Fleming, and Jividen argue that Plaintiff has failed to allege a cognizable claim. (Document Nos. 21 and 22.) Specifically, Defendants contend that "the Complaint is completely void of any specific facts that would support liability against the Defendants (individually) under § 1983. (Document No. 22, pp. 5 – 6.) Next, Defendants argue that "claims such as Plaintiff's are analyzed under a 'deliberate indifference' standard" and such a claim fails as a matter of law because "Plaintiff has not alleged any serious or significant physical or emotional injury in the Complaint." (Id., pp. 6 – 9.) Defendants Aldridge, Diamond, Fleming, and Jividen further argue they should be dismissed because Plaintiff above allegations are "solely against Lt. Davis." (Id., p. 6.)

In Response, Plaintiff merely states that "Lt. Davis put me in the hole." (Document No. 31.) Concerning Defendant Aldridge, Plaintiff claims that Defendant Aldridge knew of the alleged misconduct and failed to take corrective action. (Id.) Plaintiff did not respond to Defendant Daimond and Fleming's claim that they should be dismissed because Plaintiff's allegations are "solely against Lt. Davis." (Id.)

Liberally construing Plaintiff's Complaint, Plaintiff is clearly attempting to assert a violation of the Equal Protection Clause. The Equal Protection Clause provides that a state may

23

not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To establish an equal protection claim, a plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Veney v.Wyche, 293 F.3d 726, 730-32 (4ᵗʰ Cir. 2002), citing Morrison v. Garraghty, 239 F.3d 648, 654 (4ᵗʰ Cir. 2001); also see Fauconier, supra, 966 F.3d at 277(The inmate must first show that he was treated differently than other similarly situated inmates). "If a plaintiff makes this showing, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Veney, 293 F.3d at 730-32. "To account for the unique health and welfare concerns in the prison context," a court's review of an inmate's "challenge to a prison decision or policy is more demanding," as a court must "accord deference to the appropriate prison authorities." Fauconier, 966 F.3d at 277. In the prison context, disparate treatment passes muster so long as "the disparate treatment is 'reasonably related to [any] legitimate penological interest." Veney, 293 F.3d at 732(quoting Shaw v. Murphy, 532 U.S. 223, 225, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001)(alteration in original).

First, the undersigned finds verbal harassment or slurs by prison guards, without more, is insufficient to state a constitutional deprivation. Ivey v. Wilson, 832 F.2d 950, 954-55 (6ᵗʰ Cir. 1987); also see Lindsey v. O'Connor, 2009 WL 1316087, at * 1 (3ʳᵈ Cir. (Pa.))(holding that "[v]erbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment"); Purcell v. Coughlin, 790 F.2d 263, 265 (2ⁿᵈ Cir. 1986)(stating that name-calling does not rise to the level of a constitutional violation); Collins v. Cundy, 603 F.2d 825, 827 (10ᵗʰ Cir. 1979)(finding that a sheriff's threats to hang a prisoner were insufficient to state a constitutional deprivation); Owens v. Vanmeter, 2010 WL 817315, * 3 (D.Md. March 4, 2010)("The use of racist epithets,

24

while offensive, is not actionable under 42 U.S.C. § 1983.")(collecting cases). Next, the undersigned finds that the allegations contained in Plaintiff's Complaint fall far short of the showing required for a plausible equal protection claim. A plausible claim asserting racial discrimination requires more than simply showing that the plaintiff belongs to a racial minority. There must be factual allegations tying the unequal treatment to membership in the disfavored race. Plaintiff merely concludes that he and other black inmates were subjected to discrimination because they received disciplinary action for fighting with a group of white inmates. Although Plaintiff states that the white inmates did not receive any disciplinary action, Plaintiff fails to assert any facts supporting his conclusory that the inmates/groups were similar situated and the alleged unequal treatment was the result of race. Specifically, Plaintiff fails to allege any facts tying the alleged unequal treatment to his membership in the disfavored race. Plaintiff fails to assert any facts surrounding the alleged fight between the group of black inmates and the group of white inmates. Specifically, Plaintiff does not indicate which inmate or group of inmates instigated the fight or what action/inaction was taken by each inmate or group of inmates. Thus, Plaintiff's allegations do not indicate that he received disciplinary action for the same conduct of a similarly situated white inmate. Plaintiff's conclusory allegations and speculations are insufficient to establish that he was treated differently than a similar situated inmate based solely on his race. Roudabush v. Milano, 714 Fed.Appx. 208, 210 (4th Cir. 2017)(finding plaintiff's specific examples of alleged racial disparity were sufficient to "allege that the denial of privileges to white inmates, including Roudabush, were racially motivated."); Chapman v. Smith, 2020 WL 5742538, * 5 (E.D.Va. Sep. 24, 2020)(dismissing an equal protection claim where plaintiff "offered nothing, aside from his own speculation and subjective beliefs, to indicate that any decision made by [defendant] was motivated by race in any way, shape, or form, much less that she harbored any

animosity towards him because [of race]".); <u>Harrison v. Federal Bureau of Prisons</u>, 464 F.Supp.2d 552, 557 (E.D.Va. 2006)(dismissing equal protection claim where plaintiff failed to provide any information that would suggest that prison staff treated inmates differently based on race). Clearly, actions or inactions by each inmate would properly factor into the bringing of disciplinary charges. Plaintiff's example of there being "all white pods" merely shows that Plaintiff belongs to a racial minority at the institution, which is insufficient that state a plausible equal protection claim. Thus, Plaintiff's allegations fall short of the showing required to "nudge [his equal protection claim] across the line from conceivable to plausible." <u>Roudabush</u>, 714 Fed.Appx. at 210. Accordingly, the undersigned respectfully recommends that Defendants Aldridge, Davis, Diamond, Fleming, and Jividen's Motion to Dismiss (Document No. 21) be granted as to Plaintiff's equal protection claim.

> **D.    <u>First Amendment Claim</u>:**

In his Complaint, Plaintiff complains that Defendant Fleming denied "all reading materials that were ordered for [him] by family and friends, which is a violation of policy." (<u>Id.</u>) As an example, Plaintiff states that "Major Fleming said of one book, White Fragility by Robin DiAngelo, it was 'too racial' and would not let [Plaintiff] have it because of this." (<u>Id.</u>)

In their Motion, Defendants Aldridge, Davis, Diamond, Fleming, and Jividen argue that Plaintiff has failed to allege a cognizable claim regarding the alleged denial of access to a book. (Document Nos. 21 and 22.) Specifically, Defendants contend that "the Complaint is completely void of any specific facts that would support liability against the Defendants (individually) under § 1983. (Document No. 22, pp. 5 – 6.) Defendants argue that "Plaintiff's Complaint is utterly devoid of factual allegations describing the Defendants' conduct or the circumstances that make it actionable." (<u>Id.</u>) Defendants note that "Plaintiff asserts no specific allegations about how the

26

Defendants violated his constitutional rights." (Id.) Thus, Defendants conclude that Plaintiff's Complaint should be dismissed. (Id.)

Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States. Prison inmates have a First Amendment right to send and receive mail. Thornburgh v. Abbott, 490 U.S. 401, 407-08, 109 S.Ct. 1874, 1878-79, 104 L.Ed.2d 459 (1989). Publishers have a right under the First Amendment to communicate with inmates and inmates have a corresponding legitimate First Amendment interest in communicating with the publishers by subscription. Id. Limitations or restrictions upon inmates' constitutional rights, however, are permissible if they are "reasonably related to legitimate penological interests." Shaw v. Murphy, 532 U.S. 223, 229, 121 S.Ct. 1475, 1479, 149 L.Ed.2d 420 (2001)(quoting Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); Turner, supra, 482 U.S. at 89, 107 S.Ct. at 2261; Thornburgh, supra, 490 U.S. at 407, 109 S.Ct. at 1878-79; Lovelace v. Lee, 472 F.3d 174, 199 (4th Cir. 2006). It is plaintiff's burden to establish that the regulation at issue is unconstitutional. See Hause v. Vaught, 993 F.2d 1079, 1082 (4th Cir. 1993), cert denied, 510 U.S. 1049, 114 S.Ct. 702, 126 L.Ed.2d 668 (1994). To determine the reasonableness of a regulation, the Court should consider the follow factors: (1) whether there is a valid, rational connection between the regulation and the legitimate governmental interest; (2) whether the inmate has an alternative means of exercising the right in question; (3) what impact the requested accommodation would have on prison officials, staff, other inmates, and prison resources; and (4) whether easy and obvious alternatives exist that indicate that the regulation is an exaggerated response by prison officials. Turner, supra, 482 U.S. at 89-92, 107 S.Ct. at 2261-63.

In the instant case, however, Plaintiff completely fails to state specific facts as to how Defendant Fleming violated his constitutional rights or could plausibly be liable in this matter concerning the alleged denial of access to a book. Plaintiff merely argues that Defendant Fleming denied him access to the book in "violation of policy." As stated above, prison staff's failure to follow their own policies or procedures, standing alone, does not amount to a constitutional violation. See Riccio, supra, 907 F.2d at 1469; Donohue, supra, 2011 WL 795889 at * 3. Plaintiff wholly fails to allege specific facts explaining how Defendant Flemings conduct violated his constitutional rights. Further, Plaintiff does not allege that the policy was unconstitutional. Accordingly, the undersigned respectfully recommends that Plaintiff's above claim be dismissed.

### E.     **Eighth Amendment Claims:**

The undersigned views Plaintiff's Complaint as setting forth a claim under the Eighth Amendment. As stated above, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety" under the Eighth Amendment. Wolfish, supra, 573 F.2d at 125. Thus, sentenced prisoners are entitled to reasonable protection from harm at the hands of fellow inmates and prison officials under the Eighth Amendment. See Farmer, 511 U.S. at 832-34, 114 S.Ct. at 1976-77; Trop v. Dulles, 356 U.S. 86, 102, 78 S.Ct. 590, 598-99, 2 L.Ed.2d 630 (1958); Woodhous v. Commonwealth of Virginia, 487 F.2d 889, 890 (4th Cir. 1973). Inmates' claims that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987); Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991) cert. denied, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety). To establish a

violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991); also see King v. Rubenstein, 825 F.3d 206, 218 (4th Cir. 2016)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993))("[T]o make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'"); Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)(explaining that the above requirements "spring from the text of the amendment itself; absent intentionality, a condition imposed upon an inmate cannot properly be called 'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.'") To satisfy the objective component, Plaintiff must show that the challenged condition caused or constituted an extreme deprivation. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). To demonstrate an "extreme deprivation," a plaintiff "must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [his] exposure to the challenged conditions." Odom v. South Caroline Dept. of Corrections, 349 F.3d 765, 770 (4th Cir. 2003); also see Wilson v. Seiter, 501 U.S. at 298, 111 S.Ct. at 2321(A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities."); White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") To satisfy the subjective component, Plaintiff must demonstrate a "deliberate

29

indifference" to his health and safety by defendants. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. The Fourth Circuit has acknowledged that the "actual knowledge standard required to find prison officials deliberately indifferent to a substantial risk of serious injury may be proven by circumstantial evidence." Makdessi v. Fields, 789 F.3d 126, 137-38 (4th Cir. 2015)(stating that "even under the subjective standard, a prison official cannot hide behind an excuse that he was unaware of a risk, no matter how obvious"); also see Porter v. Clarkes, 923 F.3d 348, 361 (4th Cir. 2019)("an obvious risk of harm justifies an inference that a prison official subjectively disregarded a substantial risk of serious harm to the inmate"). Plaintiff in this case must therefore allege and establish that each Defendant was aware of the excessive risk to Plaintiff's health or safety and each Defendant disregarded that risk.

### (i)    *Denial of Decontamination After Exposure to Chemical Spray:*

In his Complaint, Plaintiff alleges that on September 21, 2021, he was sprayed "with a highly chemical agent meant to be used outside" and he was "left handcuffed while it burned [his] buttocks and crotch area." (Document No. 1, pp. 8 – 9.) Plaintiff explains he was "then put in an extraction chair on a 'hitching post' for all to see by Capt. Paul Diamond." (Id.) During this time, Plaintiff states that he informed Defendants Diamond and Fleming that he was burning from the chemical spray, but they just laughed at Plaintiff. (Id.) Plaintiff contends that he was not allowed to decontaminate after being sprayed with the chemical. (Id.) Plaintiff explains that after "5 hours of sitting in the extraction chair," Plaintiff was placed back in his cell without the opportunity to decontaminate and his cell was still contaminated with the chemical spray. (Id.)

30

In their Motion to Dismiss, Defendants Diamond and Fleming argue that Plaintiff has failed to allege a cognizable claim. (Document Nos. 21 and 22.) Specifically, Defendants contend that "the Complaint is completely void of any specific facts that would support liability against the Defendants (individually) under § 1983. (Document No. 22, pp. 5 – 6.) Next, Defendants Diamond and Fleming argue that "claims such as Plaintiff's are analyzed under a 'deliberate indifference' standard" and such a claim fails as a matter of law because "Plaintiff has not alleged any serious or significant physical or emotional injury in the Complaint." (Id., pp. 6 – 9.) In Response, Plaintiff states "I was sprayed illegally with a  high powered chemical agent by Captain Diamond in retaliation." (Document No. 31.)

Liberally construing Plaintiff's Complaint, Plaintiff asserts that Defendants Diamond and Fleming subjected him to cruel and unusual punishment in violation of the Eighth Amendment by failing to allow Plaintiff to decontaminate after being sprayed with a chemical agent. Plaintiff alleges he suffered extreme burning pain as a result of being denied the opportunity to decontaminate. Plaintiff further alleges that he notified Defendant Diamond and Fleming of his need to decontaminate, but both Defendants disregarded Plaintiff's need. The denial of a decontamination shower for a period of days, or even hours, after an inmate is subjected to OC spray can constitute an Eighth Amendment violation. Williams v. Benjamin, 77 F.3d 756, 768(4th Cir. 1996)(the denial of decontamination can give rise to an Eighth Amendment claim); also see Mann v. Failey, 578 Fed.Appx. 270, 274-57 (4th Cir. July 17, 2014)(noting that a reasonable jury could find plaintiff adequately established both the subjective and objective prongs of his Eighth Amendment claim where plaintiff swore that after being sprayed with OC spray, he repeatedly asked officers and medical staff for a shower, and experienced burning pain over his body for five days); Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002)(failure to decontaminate prisoners

exposed to pepper spray may support a claim for the violation of the Eighth Amendment); Brown v. Coleman, 2021 WL 4037504, * 5 (W.D.Va. Sept. 3, 2021)(finding inmate's allegation of being denied a decontamination shower for one week after being subjected to OC spray created a genuine issue of material fact); Bomar v. Wetzel, 2020 WL 907641, * 5 (W.D.Pa. Feb. 2, 2020)("Courts have held that the failure to decontaminate prisoners or otherwise provide medical treatment for prisoners exposed to pepper spray can support a claim for a violation of the Eighth Amendment where the failure to treat the prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."); Murphy v. Ortt, 2018 WL 1513007, * 7 (D.Md. March 26, 2018)(finding prisoner created a genuine issue of material fact where he alleged he was placed in a cell without running water for several hours after he was subjected to pepper spray). Accepting Plaintiff's factual allegations as true, the undersigned finds that Plaintiff has stated a plausible claim under the Eighth Amendment. Accordingly, the undersigned respectfully recommends that Defendants Aldridge, Davis, Diamond, Fleming, and Jividen's Motion to Dismiss (Document No. 21) be denied as to Plaintiff's claim that Defendants Diamond and Fleming violated Plaintiff's Eighth Amendments rights by denying Plaintiff decontamination after his exposure to a chemical spray.

### (ii)    Alleged exposure to drugs:

In his Complaint, Plaintiff claims that "Keefe worker Kim allowed [Plaintiff] to be poisoned with PCP." (Document No. 1, pp. 8 – 9.) Plaintiff acknowledges that "she was fired along with another worker for bringing illegal narcotics into the jail using commissary bags that contained our food." (Id.)

In its Motion, Defendant Keefe argues that it is entitled to dismissal because "Plaintiff has not articulated any cognizable claims as to Keefe." (Document Nos. 25 and 26.) Defendant Keefe

32

notes that although Plaintiff appears to allege that an employee "allowed him" to be drugged, "Plaintiff does not identify what Constitutional right this implicates, what mental status the employee held, how the actions arose above mere negligence or, most importantly, how this behavior can be attributed to an employer." (Document No. 26, pp. 3 – 4.) Thus, Defendant Keefe argues that "Plaintiff threadbare recitations fails to implicate a constitutionally protected interest and fail to set forth any factual allegations relating to conduct of Keefe or its employees which could be construed as violative of his constitutional rights." (Id.)

In Response, Plaintiff argues that "Keefe worker Kim was reckless [by] allow[ing] me to [be] expose[d] to PCP and she was negligent and commit[ed] an illegal [act] which was fired for." (Document No. 31.)

In Reply, Defendant Keefe continues to argue that its Motion to Dismiss "should be granted because Plaintiff's Response fails to offer any expanded factual allegations that correct the deficiencies in this Complaint." (Document No. 32.) Defendant Keefe asserts that "[m]erely stating that 'Kim,' an alleged employee of Keefe, 'allowed' Plaintiff to be 'expose[d] to PCP' does not demonstrate a facially plausible § 1983 claim against Keefe." (Id.) Defendant Keefe contends that "[t]his allegation is insufficient to suggest that he maintains a cognizable claim against Keefe." (Id.)

Assuming Plaintiff's allegations as true, Plaintiff has failed to state a constitutional claim. In order to establish a claim of failure to protect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison officials acted with "'deliberate indifference' to inmate health or safety." Farmer, 511 U.S. at 834, 114 S.Ct. at 1977. Plaintiff does not assert a factual basis for his failure to protect claim against Defendant Keefe. First, Plaintiff fails to allege that he was incarcerated under conditions imposing a substantial risk

33

of serious harm. Second, Plaintiff fails to allege facts sufficient to satisfy the subjective component of deliberate indifference. To satisfy the subjective component, Plaintiff must allege that each Defendant was consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. There, however, is no allegation or indication that Defendant Keefe knew of and disregarded an excessive risk to Plaintiff's health or safety. Further, allegations of recklessness or negligence is insufficient to establish deliberate indifference. Finally, Plaintiff acknowledges that Defendant Keefe terminated the employee upon learning that the employee was bringing drugs into the prison. Accordingly, there is no allegation or indication that Defendant Keefe knew of, and deliberate disregarded, a known risk to Plaintiff's health or safety. The undersigned, therefore, respectfully recommends that Defendant Keefe's Motion to Dismiss (Document No. 25) be granted.

### (iii)    *Deliberate Indifference to Medical/Mental Health Needs:*

In his Complaint, Plaintiff asserts that he discussed with Nurse Regina that "something was not right following the PCP incident that something was wrong with [his] mind," but Nurse Regina denied him any medical care. (Document No. 1, pp. 8 – 9.)

In her Motion, Defendant Regina Bryant argues that there is no evidence that her conduct constituted deliberate indifference to a serious medical need. (Document Nos. 23 and 24.) Defendant Bryant notes that although she is the Director of Nursing at WRJ, "it is difficult to understand why the Plaintiff has named her as a defendant" because the Complaint is void of any specific allegations against her. (Id.) Defendant Bryant further notes that "PrimeCare mental healthcare employees who did see the Plaintiff acted promptly to see, diagnose and treat his condition." (Id.) Accordingly, Defendant Bryant argues that Plaintiff's claims against her should be dismissed. (Id.) As Exhibits, Defendant Bryant attached copies of Plaintiff's pertinent medical

records and sick call requests. (Document Nos. 23-1 and 23-2.)

In his Response, Plaintiff failed to respond to Defendant Bryant's argument that there is no evidence that her conduct constituted deliberate indifference to a serious medical need. (Document No. 31.)

As stated above, prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." <u>Wolfish</u>, 573 F.2d at 125. Sentenced prisoners are therefore constitutionally guaranteed adequate medical care under the Eighth Amendment. To establish a violation of the Eighth Amendment, an inmate must allege and prove (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. <u>Wilson</u>, 501 U.S. at 297 - 99, 111 S.Ct. at 2323 - 2325. A medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. <u>Id.</u>; <u>also see</u> <u>Gaudreault v. Municipality of Salem, Mass.</u>, 923 F.2d 203, 208 *1st Cir. 1990)("A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."); <u>Morales Felicciano v. Calderson Serra</u>, 300 F.Supp.2d 321, 341 (D.P.R. 2004)("A constitutional violation is . . . established when government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medication attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort, or a threat to good health.") The Fourth Circuit stated the applicable standard in <u>Miltier v. Beorn</u>, 896 F.2d 848, 851 - 852 (4th Cir. 1990), as follows:

35

> To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. * * * Deliberate indifference may be demonstrated by either actual intent or reckless disregard. * * * A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. * * * Nevertheless, mere negligence or malpractice does not violate the eighth amendment. (Citations omitted)

Miltier v. Born, 896 F.2d 848, 851 - 52 (4th Cir. 1990)(*recognized in* Sharpe v. South Carolina Dept. of Corr., 621 Fed.Appx. 732, 733 (4th Cir. 2015) *as overruled in part on other grounds by* Farmer, 511 U.S. at 837, 114 S.Ct. 1970); See also Sosebee v. Murphy, 797 F.2d 179, 183 (4th Cir. 1986)(Facts indicating that guards were aware that inmate's condition had worsened and was life-threatening and intentionally ignored the situation and refused to seek medical assistance provided a reasonable basis for finding deliberate indifference to inmate's medical needs.); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980)(Pretrial detainee's allegations of delay in treatment of his broken arm indicated a reasonable basis for inferring deliberate indifference to his serious medical needs.); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975)(Summary judgment for defendants affirmed where claim that inmate received constitutionally inadequate medical treatment involved a question of medical judgment not subject to judicial review.) Therefore, Plaintiff must first allege and eventually establish a "sufficiently serious" deprivation of adequate medical care and resulting "serious or significant physical or mental injury" in order to maintain and prevail upon his Eighth Amendment claim. Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. See Farmer, *supra*, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, *supra*, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that Defendant Bryant was aware that he was receiving constitutionally inadequate medical care and disregarded the serious physical consequences.

Liberally construing Plaintiff's Complaint, Plaintiff alleges that Defendant Bryant acted with deliberate indifference in providing treatment following his exposure to PCP. For purposes of an Eighth Amendment claim, a medical need is serious if it involves a condition which places an inmate at substantial risk of serious harm, a condition for which lack of treatment causes continuous severe pain or significantly affects an individual's daily life activities, or a condition diagnosed as mandating treatment or obviously requiring medical attention. Although Defendant Bryant states that "it is difficult to ascertain whether Plaintiff's medical need is serious" because Plaintiff's Complaint vaguely alleges that "something was wrong with [his] mind," Defendant Bryant notes that Plaintiff was assessed with having "substance induced psychosis" on September 28, 2020. (Document No. 24, p. 8.) Defendant Bryant, therefore, concedes that Plaintiff's "ultimate diagnosis did meet the legal criteria for a serious medical condition." (Id., p. 8.) Accordingly, the undersigned will assume for purposes of this motion that Plaintiff's condition was serious enough to give rise to an Eighth Amendment claim.

Next, the undersigned will consider whether Defendant Bryant acted with deliberate indifference to Plaintiff's health and safety under a subjective standard. To satisfy the subjective component, Plaintiff must allege each Defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff contends that Defendant Bryant acted with deliberate indifference in failing to provide him medical care after he informed her that

"something was not right following the PCP incident that something was wrong with [his] mind." (Document No. 1, pp. 8 – 9.) The undisputed evidence reveals that Plaintiff was transported to an outside hospital on August 31, 2020, regarding his possible exposure to PCP. (Document No. 23-1, p. 3.) Plaintiff was diagnosed has being positive for PCP toxicity. (Id.) Following Plaintiff's release from the hospital on September 2, 2020, Plaintiff was returned to the institution where he was placed under medical observation for 48 hours. (Id.) Plaintiff noted no complaints upon his return to the institution. (Id.) On September 3, 2020, Plaintiff was examined by Physician Assistant ("PA") David Miller. (Id.) Plaintiff reported no complaints and stated that "he feels fine and wants to go back down hall." (Id.) PA Miller took Plaintiff vitals and noted no acute distress. (Id.) PA Miller indicated that "if possible, [Plaintiff] can finish quarantine down hall" and return to medical as needed. (Id.) On September 4, 2020, Plaintiff was again examined by PA Miller. (Id.) PA Miller noted that Plaintiff was still in medical even though Plaintiff was "cleared to finish quarantine down hall yesterday." (Id.) PA Miller took Plaintiff's vitals and noted no acute distress. (Id.) PA Miller again noted that Plaintiff voiced no complaints and he will again notify nursing staff that Plaintiff could "finish quarantine down hall." (Id.) On September 12, 2020, Plaintiff submitted a Sick Call Request stating "need to see psych." (Document No. 23-2.) On the same day, Plaintiff's Sick Call Request was answered by a PrimeCare LPN, who referred Plaintiff to Mental Health. (Id.) On September 24, 2020, Plaintiff was evaluated by Kristen Golden, a psychologist. (Document No. 23-1, pp. 1 - 2.) Ms. Golden noted that Plaintiff requested to be seen by a psychiatrist because "he doesn't know how to distinguish what is real and isn't in his health anymore" and he "feels like he is always being discriminated against but then again, maybe it's in [his] head." (Id.) Plaintiff further stated that "PCP was found in [his] system and [he has] never done drugs in [his] life." (Id.) It was further noted that Plaintiff "begged for [Mental Health] help

38

in better understanding why he is feeling this way." (<u>Id.</u>) Ms. Golden referred Plaintiff to psychiatry for further evaluation and a possible medication assessment. (<u>Id.</u>) Four days later, on September 28 2020, Plaintiff was evaluated by Psychiatric PA Jade Naylor. (<u>Id.</u>, p. 1.) Plaintiff reasserted the complaints he made to Ms. Golden and further asserted that after being exposed to PCP, Plaintiff had a psychotic episode that included delusions and erratic behavior. (<u>Id.</u>) Plaintiff described continuing visual delusions, depression, and being paranoid. (<u>Id.</u>) Plaintiff, however, denied any suicidal ideation. (<u>Id.</u>) PA Naylor diagnosed Plaintiff with Substance Induced Psychosis, prescribed Risperdal, and ordered routine labs. (<u>Id.</u>) Dr. Naylor instructed Plaintiff to follow up in four weeks, or sooner if he had any concerns. (<u>Id.</u>) Plaintiff indicated that he understood and agreed with the treatment plan. (<u>Id.</u>)

Based on the foregoing, the undersigned finds that Plaintiff cannot establish a claim of deliberate indifference. Specifically, Plaintiff has not established that Defendant Bryant knew of and disregarded Plaintiff's need for treatment. The record is void of any indication that Plaintiff ever requested medical or mental health treatment specifically from Defendant Bryant regarding his alleged exposure to PCP. Further, the record clearly reveals that healthcare employees promptly evaluated, diagnosed, and treated Plaintiff's condition. Upon Plaintiff notifying medical staff via a Sick Call Request that Plaintiff "need[ed] to see psych," medical staff promptly referred Plaintiff to Mental Health. Approximately two weeks later on September 24, 2020, Plaintiff was evaluated by a psychologist that referred to psychiatry for a possible medication assessment. (<u>Id.</u>) Four days later, on September 28 2020, Plaintiff was evaluated and treated by PA Naylor. The undersigned, therefore, finds no evidence that Defendant Bryant or other healthcare employees knowingly disregarded Plaintiff's need for treatment. If anything, Plaintiff appears to simply disagree with the appropriate course of treatment. An inmate's disagreement with his medical care or the course

of treatment is insufficient to support a deliberate indifference claim, and questions of medical judgment are not subject to judicial review. Wright v. Collins, 766 F.2d 841, 849 (4ᵗʰ Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4ᵗʰ Cir. 1975). "[T]he Fourth Circuit has observed that an inmate's treatment may be limited to what is medically necessary as opposed to 'that which may be considered merely desirable' to the inmate." Malcomb v. Raja, 2010 WL 3812354, at * 1 - 2 (S.D.W.Va. Sept. 22, 2010)(quoting Bowring v. Godwin, 551 F.2d 44, 47-48 (4ᵗʰ Cir. 1977)(finding that plaintiff was provided medication for his pain and "Defendants' decision to provide plaintiff with one medication over another does not give rise to a constitutional violation.") Based upon the undisputed facts, the undersigned finds that Defendant Bryant did not act with deliberate indifference in providing treatment for Plaintiff's condition. Thus, the undersigned respectfully recommends that Defendant Bryant's Motion (Document No. 23) be granted.

**F.    Supervisory Liability:**

Plaintiff names Betsy Jividen, Commissioner of WVDOC, as a Defendant. (Document No. 1.) Plaintiff appears to contend that Defendant Jividen violated his constitutional rights by failing to respond to his letter complaining of alleged misconduct by staff concerning his disciplinary proceedings. (Id.) Plaintiff, however, fails to set forth any specific factual allegations against Defendant Jividen. (Id.)

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. * * * Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the officials own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676, 129 S.Ct. 1936, 1948, 173 L.Ed.2d 868 (2009); see also Trulock v. Freeh, 275 F.3d 391, 402 (4ᵗʰ Cir. 2001), cert. denied, 537 U.S. 1045 , 123 S.Ct. 621, 154 L.Ed.2d 517 (2002)("In

a <u>Bivens</u> suit there is no *respondeat superior* liability. * * * Instead, liability is personal, based upon each defendant's own constitutional violations." (Citation omitted.)); <u>Monell</u>, <u>supra</u>, 436 U.S. at 694, 98 S.Ct. at 2018("the mere right to control without any control or direction having been exercised and without any failure to supervise is not enough to support § 1983 liability"). Liability can be premised, however, "on a recognition that supervisory indifference or 'tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." <u>Slakan v. Porter</u>, 737 F.2d 368, 372 (4th Cir. 1984), <u>cert. denied</u>, 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985). To establish liability under Section 1983 for a supervisory defendant, the plaintiff must establish the following:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

<u>Shaw v. Stroud</u>, 13 F.3d 791, 799 (4th Cir. 1994). Thus, a plaintiff must show "a pervasive and unreasonable risk of harm from some specified source and that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" <u>Slakan</u>, 737 F.2d at 373. Evidence of a supervisor's continued inaction in the face of documented widespread abuses provides an independent basis for finding she either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of her subordinates. <u>Id.</u> A supervisor's mere knowledge of a subordinate's unconstitutional conduct is not enough. Rather, Section 1983 liability may be imposed upon a supervisor only on the basis of purposeful "violations of his or her supervisory responsibilities." <u>Ashcroft</u>, 556 U.S. at 676, 129 S.Ct. at 1949. Thus, the inquiry for the Court is whether the Defendant individually "acted wantonly, obdurately, or with deliberate

indifference to the pervasive risk of harm." <u>Moore v. Winebrenner</u>, 927 F.2d 1312, 1315 (4th Cir. 1991).

Plaintiff's Complaint fails to allege specific facts demonstrating how Defendant Jividen was personally involved in violating any of Plaintiff's constitutional rights. Essentially, Plaintiff alleges that Defendant Jividen violated his constitutional rights with respect to her failure to supervise employees or in responding to Plaintiff's letter and/or appeal of a grievance. The dismissal of a defendant is appropriate where the defendant's sole involvement in an action is related to the administrative remedy process. <u>See</u> <u>Fellove v. Heady</u>, 2008 WL 196420 *4 (N.D.W.Va. Jan. 22, 2008)(stating that "to the extent that the plaintiff may be asserting that these defendants were deliberately indifferent to his needs by denying his administrative grievances, that claim is also without merit as this is not the type of personal involvement required to state *Bivens* claim"); <u>Mabry v. Ramirez</u>, 2007 WL 4190398 *6 (N.D.W.Va. Nov. 21, 2007)(holding that "denying a prisoner's institutional grievance is not the type of personal involvement required to state a *Bivens* claim for deliberate indifference to serious medical needs"); <u>Paige v. Kupec</u>, 2003 WL 23274357 *1 (D.Md. March 31, 2003), <u>aff'd</u>, 70 Fed. Appx. 147 (4th Cir. 2003)(finding that the warden should be dismissed where the only claim against the warden concerned his dismissal of plaintiff's administrative remedy). Plaintiff's allegations do not indicate any personal involvement by Defendant Jividen other than her alleged failure to respond to a letter and/or grievance. Further, Plaintiff's allegations do not support a finding that Defendant Jividen continually failed to act "in the face of documented widespread abuses." Besides Plaintiff's conclusory allegations, there is no indication that Defendant Jividen was personally involved in the denial of any constitutional right to Plaintiff, deliberately allowed Plaintiff's improper placement in the "hole," or tacitly authorized staff's alleged misconduct. Accordingly, Plaintiff

has improperly raised his claim against Defendant Jividen under the doctrine of *respondeat superior* and has failed to establish supervisory liability. The Court therefore finds that Defendants Jividen should be dismissed from the above action.

      **G.**      <u>**Qualified Immunity**</u>**:**

In their Motion to Dismiss, Defendants Aldridge, Davis, Diamond, Fleming, and Jividen argue that Plaintiff's claims are barred against all of the Defendants by the doctrine of qualified immunity. (Document Nos. 22 and 23.) Specifically, Defendants argue that they are entitled to qualified immunity because Plaintiff's "Complaint falls short of making necessary, specific factual allegations of how the Defendants deprived the Plaintiff of any right, privileges, or immunities secured by the Constitution." (Document No. 23, pp. 9 – 10.) Defendants further state that there is no allegation made that Defendant's conduct violated clearly established law." (<u>Id.</u>) Plaintiff failed to address this argument in his Response. (Document No. 31.)

Based upon the undersigned's above recommendations of dismissal of all claims except Plaintiff's Eighth Amendment claim against Defendants Diamond and Fleming for failure to allow decontamination, the undersigned will consider the qualified immunity defense as it relates solely to this remaining claim against Defendants Diamond and Fleming. Courts have established qualified immunity for government officials in consideration of a number of factors including the substantial cost of litigation against government officials, the distraction of government officials from their public responsibilities and the disincentive to responsible and capable persons to accept government positions if there is no protection against suits accusing them of misconduct in the performance of their public duties. Government officials performing discretionary functions are generally protected from civil damages liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009)(quoting

Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). In

determining the validity of a qualified immunity defense, the Court should be guided by a two-

prong test: (1) whether the facts viewed in the light most favorable to the Plaintiff establish a

deprivation of an actual constitutional right; and (2) whether that right was clearly established at

the time of the purported violation. Id. The sequence of the steps is immaterial following Pearson.

The Court may exercise discretion in deciding which of the two prongs "should be addressed first

in light of the circumstances in the particular case at hand." Id. at 818. "A constitutional right is

'clearly established' when its contours are sufficiently clear that a reasonable official would

understand that what he is doing violates that right." Cooper v. Sheehan, 735 F.3d 153, 158 *4th

Cir. 2013)(internal quotation marks and citations omitted).

In the instant case, Defendants argue they are entitled to qualified immunity because

Plaintiff has not alleged a violation of his constitutional rights. As explained above, a liberally

construction of the factual allegations contained in Plaintiff's Complaint establishes that Plaintiff

has alleged a cognizable Eighth Amendment claim concerning Defendants Diamond and

Fleming's failure to allow decontamination. Defendants do not dispute that the Eighth Amendment

right to be free from cruel and unusual punishment was clearly established at the time of the

allegation violations. Defendants do not dispute that it was well established that at the time of the

alleged constitutional violations that sentenced prisoners were entitled to "adequate food, clothing,

shelter, sanitation, medical care and personal safety" under the Eighth Amendment. As explained

above, the undersigned finds that Plaintiff's factual allegations taken as true establish that

Defendants Diamond and Fleming knowingly denied Plaintiff decontamination after Plaintiff's

exposure to a chemical spray. Plaintiff further alleges that that he specifically informed Defendants

Diamond and Fleming that Plaintiff was experiencing extreme burning to sensitive areas of his body following his exposure to the chemical spray, but both refused to allow Plaintiff to decontaminate. The foregoing allegations taken as true support Plaintiff's claim that both Defendant Diamond and Defendant Fleming were aware that the above denial created an excessive risk to Plaintiff's health and safety and each deliberately failed to act. See Makdessi, supra, 789 F.3d at137-38(stating that "even under the subjective standard, a prison official cannot hide behind an excuse that he was unaware of a risk, no matter how obvious"); Porter, supra, 923 F.3d at 361("an obvious risk of harm justifies an inference that a prison official subjectively disregarded a substantial risk of serious harm to the inmate"). The undersigned finds that when viewing the factual allegations true, Plaintiff could establish a violation of his clearly established rights under the Eighth Amendment. The undersigned, therefore, respectfully recommends that Defendants Aldridge, Davis, Diamond, Fleming, and Jividen's Motion to Dismiss (Document No. 21) be denied concerning Defendants Diamond and Fleming's claim of qualified immunity as it relates to Plaintiff's Eighth Amendment decontamination claim.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendant Brewer's Motion to Dismiss (Document No. 19), **GRANT** Defendant Nurse Regina Bryant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document No. 23), **GRANT** Defendant Keefe Group's Motion to Dismiss (Document No. 25), and **GRANT in part and DENY in part** Defendants Aldridge, Davis, Diamond, Fleming, Jividen's Motion to Dismiss (Document No. 21). Specifically, the undersigned recommends that Defendants Aldridge, Davis, Diamond, Fleming, Jividen's Motion to Dismiss (Document No. 21) be **GRANTED** as to

Plaintiff's claim of a due process violation, equal protection violation, First Amendment violation, and supervisory liability. The undersigned recommends that Defendants Aldridge, Davis, Diamond, Fleming, Jividen's Motion to Dismiss (Document No. 21) be **DENIED** as to Plaintiff's Eighth Amendment claim against Defendants Diamond and Fleming for their alleged failure to allow Plaintiff to decontaminate following Plaintiff's exposure to chemical spray.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Chambers and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: October 26, 2022.



Omar J. Aboulhosn
United States Magistrate Judge